```
              IN THE UNITED STATES DISTRICT COURT
                         FOR THE
                MIDDLE DISTRICT OF PENNSYLVANIA
```

| | |
|---|---|
| ROBERT HANKINS, | : |
| Plaintiff | : |
| v. | : CIVIL NO. 3:CV-11-953 |
| JOHN WETZEL, ET AL., | : (Judge Conaboy) |
| Defendants | : |

_____

## MEMORANDUM
### Background

Robert Hankins (Plaintiff), an inmate presently incarcerated at the State Correctional Institution, Huntingdon, Pennsylvania (SCI-Huntingdon) filed this pro se civil rights action in May, 2011 pursuant to 42 U.S.C. § 1983. Plaintiff's Amended Complaint (Doc. 56) raises claims relating to his prior confinement in the Restricted Housing Unit (RHU) at the Rockview State Correctional Institution, Bellefonte, Pennsylvania (SCI-Rockview).[1]

A motion to dismiss filed by Defendant Bureau of Health Care Services was previously granted. By Memorandum and Order dated February 26, 2013, a motion to dismiss filed by Defendants Physician's Assistants (PAs) Jeremy Tipton and Julie Pensiero-Koltay, was partially granted and dismissal was granted in favor of

---

1. Hankins was held at SCI-Rockview from April 12, 2010 through March 22, 2011 and from April 5, 2011 to the filing of his action. He was also held at that prison for other periods of time subsequent to the filing of this matter.

Defendant Tipton. Defendant Pensiero-Koltay's motion seeking entry of summary judgment was recently granted by Memorandum and Order dated March 3, 2015. See Docs. 223 & 224.

The other Defendants named in the Amended Complaint include multiple Jane Doe Nurses and the following officials of the Pennsylvania Department of Corrections (DOC): Secretary John Wetzel; Deputy Secretary Shirley Moore Smeal; Regional Staff Assistants Brad Newton and Jeffrey Witherite; Grievance Officers Michael Bell and Dorina Varner.  Plaintiff also named the following SCI-Rockview officials: Superintendent Marirosa Lamas; Unit Managers Kurt Granlund and Sharon Clark; Deputy Superintendents Brian Thompson, Robert Marsh, and Jeff Horton; Program Manager Tim Miller; Superintendent's Assistant Jeffrey Rackovan; Health Care Administrator William "Ted" Williams; Major George Snedeker; Lieutenants Daniel Fox, John Grice, John Graham, and Amy Nixon; Mail Room Supervisor Steward Boone; Business Manager Francis Daugherty; Accountant Beatrice Rivello; Sergeant John Knight.  (The above-named Defendants, with the exception of the Jane Doe Nurses, are hereinafter referred to as the "Corrections Defendants")

A motion to dismiss the Amended Complaint filed by the Corrections Defendants was partially granted by Memorandum and Order dated March 26, 2013. See Doc. 103.  Specifically, dismissal was granted with respect to: (1) Hankins' damage claims against Corrections Defendants in their official capacities; (2) all toe nail trimming related claims; (3) the temporary denial of sensitive toothpaste claim; (4) the allegations pertaining to a delay in

2

providing Plaintiff with eyeglasses and the failure to provide him with tinted glasses.

Dismissal was also granted as to any claims against Secretary Wetzel, Deputy Secretary Moore Smeal, Regional Staff Assistants Newton and Witherite, and Grievance Officers Bell and Varner of the DOC as well as Superintendent Lamas, Deputy Superintendents Thompson, Marsh, and Horton, Program Manager Miller, Superintendent's Assistant Rackovan, Major Snedeker, and Unit Manager Clark of SCI-Rockview based upon their respective supervisory capacities or their handling of Plaintiff's administrative grievances and complaints. The requests for dismissal of Plaintiff's claims of denial of access to the courts; equal protection violations; loss of personal property claims; total movement restriction related claims; RLUPIA and religious interference claims were also granted.

As a result of the March 26, 2013 Memorandum and Order, dismissal was granted in favor of the following DOC Defendants, Secretary John Wetzel; Deputy Secretary Shirley Moore Smeal; Regional Staff Assistants Brad Newton and Jeffrey Witherite; Grievance Officers Michael Bell and Dorina Varner. However, Hankins' claims that: (1) he was prevented from purchasing and/or receiving publications of any kind while in the Restricted Housing Unit; (2) subjected to retaliation for pursuing legal remedies; and (3) interference with his incoming mail were allowed to proceed.

In addition, the Plaintiff was also granted thirty (30) days in which to provide this Court with the names of the Jane Doe

Defendants and was forewarned that failure to do so to would result in dismissal being entered in favor of the Jane Doe Defendants.[2]

Presently pending is Remaining Corrections Defendants' motion seeking entry of summary judgment. See Doc. 177. The opposed motion is ripe for consideration.[3]

## Discussion

Remaining Corrections Defendants argue that they are entitled to summary judgment because: (1) Plaintiff fails to establish any First Amendment violations and (2) Hankins has not established retaliation as a matter of law. See Doc. 140, p. 2.

**Standard of Review**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts

---

2. In light of Plaintiff's prolonged failure to identify the Jane Doe Defendants the claims against those individuals will be deemed withdrawn.

3. Disposition of the pending summary judgment motion was previously held in abeyance pending resolution of discovery related motions filed by Hankins.

as to the existence of a genuine issue of material fact in favor of the non-moving party.  Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992).  Unsubstantiated arguments made in briefs are not considered evidence of asserted facts.  Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial."  Celotex, 477 U.S. at 322-23.  "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'"  Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**First Amendment**

The Amended Complaint alleges that while housed in the RHU

5

certain Corrections Defendants, particularly Defendants Grice, Nixon, Boone, Knight, and Graham "denied Plaintiff from purchasing and/or receiving publications of any kind."[4]  Doc. 56, ¶ 36.  Hankins adds that publications addressed to him were not delivered.  The prohibited publications included religious books and newspapers.  Plaintiff notes that this publication ban lasted approximately two (2) years.  See id. at ¶ 39.  In a related claim, the Amended Complaint contends that Defendants Daugherty and Rivello ignored Hankins' requests to have funds removed from his inmate account which were to be used to renew subscriptions to publications.

     Remaining Corrections Defendants note that during the relevant time period, Plaintiff was housed in the SCI-Rockview RHU in Disciplinary Custody status.[5] The Plaintiff was also on the RHU's Restricted Release List.  As a consequence of that designation, he could be afforded fewer institutional privileges in an attempt to encourage better behavior.

     It is undisputed that the DOC had a policy which prohibited RHU inmates from making outside purchases.  SCI-Rockview officials interpreted that policy as including books purchased for an RHU prisoner by others in the definition of outside purchases, other Pennsylvania state correctional facilities defined the policy in a less restrictive fashion.  See Doc. 140, p. 26.  Due to their

---

4.  Hankins acknowledges that the publications ban occurred only during a portion of his RHU confinement.

5.  The RHU houses prisoners on either administrative or disciplinary custody status.

6

initial understanding of that policy, Hankins was not permitted to receive books purchased by others while in the RHU.

According to the Corrections Defendants, Plaintiff was also permitted to receive newspapers and to renew subscriptions for them and to receive magazines for which he had a preexisting subscription. Under another SCI-Rockview policy, RHU prisoners were also allowed to possess only one newspaper at a time but were permitted a one for one exchange. Pursuant to a separate limitation, RHU prisoners were allowed to posses one (1) box of personal property within their cells.

However, as the result of a grievance filed by Hankins, SCI-Rockview changed its more stringent policy (after the filing of this matter). Specifically, with respect to publications ordered by an RHU prisoner or ones purchased by friends or family and sent from an approved vendor, if the publication is deemed to be appropriate and cannot be acquired by the correctional facility through its own means, the inmate will be permitted to order the publication. The publication will than be placed with the RHU prisoner's stored property unless it will fit within the one records box of property that such inmates may retain within their RHU cells.

SCI-Rockview policy was also changed to allow RHU prisoners permission to retain more than one newspaper at a time to the extent that the additional newspapers would fit into the permitted one box of personal property.

7

Corrections Defendants assert that although their initial interpretation of DOC policy was admittedly "a more restrictive approach" than what was in place at other Pennsylvania state correctional facilities at that time, the prison's approach was not unconstitutional.[6]  Doc. 140, p. 28.

As previously discussed by this Court's March 26, 2013 Memorandum and Order, the United States Supreme Court has held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987); see also O'Lone v. Shabazz, 482 U.S. 342 (1987) (reiterating recognition of the Turner standards as being the applicable test for determining the constitutionality of prison regulations).[7]  See Doc. 103, p. 21.  These interests include: "deterrence of crime, rehabilitation of prisoners, and institutional security." O'Lone, 482 U.S. at 348.

This standard implies that a balancing test must be applied

---

6. In light of the policy changes enacted as a result of the Plaintiff's grievances it would appear that any request by Hankins for injunctive relief with respect to the amended policies is moot.

7. In Turner, the Supreme Court set forth four factors to consider in reaching a decision: (1) is there a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it" (citation omitted), 482 U.S. at 89; (2) does the prisoner have alternate means of "exercising the right that remain open to prison inmates," Id. at 90; (3) what "impact" would "accommodation of the asserted constitutional right have on guards and other inmates, and on the allocation of prison resources generally," Id.; and (4) what "ready alternatives" to the prison regulation exist. Id.

between the prisoner's claims of constitutional infringement and the prison's need of internal order and security.

In Thornburgh v. Abbott, 490 U.S. 401 (1989), the United States Supreme Court required that prison regulations which restrict an inmate from receiving outside publications must be analyzed under the Turner reasonableness standard. The Court ruled that an incoming publication which is found to be potentially detrimental to order and security may be excluded.

As was the case with their motion to dismiss, Remaining Corrections Defendants again rely on the United States Supreme Court's decision in Beard v. Banks, 548 U.S. 521, 525-27 (2006). In Beard, the Court addressed a similar DOC policy which restricted access to newspapers, publications and photographs to inmates in a Long Term Segregation Unit (LTSU).[8] The Supreme Court concluded that given the substantial deference given to the professional judgment of prison administrators and the same factors cited by the Corrections Defendants herein, a similar DOC publications ban imposed on LTSU prisoners passed scrutiny under Turner.

This Court's March 26, 2013 Memorandum and Order in addressing Corrections Defendants' argument agreed that the Beard reasoning was persuasive. However, it was noted that Beard addressed a summary judgment request which was supported by facts showing that legitimate penological interests were being served by the challenged policy as required by Turner. See Doc. 103, p. 23. As a result, this Court concluded that because the Corrections

---

8. The LTSU is a more restrictive environment than the RHU.

Defendants' motion to dismiss did not provide the Court with a factual record addressing the controlling Turner standards, the request for dismissal was subject to dismissal. See Taylor v. Hayman, 2011 WL 735449 * 11 (D.N.J. 2011).

The first Turner standard requires that the regulation at issue must have a valid rational connection to a legitimate government interest. Corrections Defendants' pending summary judgment request, relying on factors cited by DOC Secretary Beard in Iseley v. Beard, 841 A.2d 168 (Pa. Cmwlth. 2004), argues that the regulation serves a legitimate penological interest because it reduces the risk of flammable materials in the RHU cell, limits the prisoner's ability to hide or exchange contraband, takes away resources for potential weapons, and is a non-violent form of behavior modification used to teach RHU prisoners to follow basic orders and behave in a safe and acceptable manner. See Doc. 140, p. 28; Iseley, 841 A.2d at 174.

The second Turner factor requires inquiry into whether prisoners have alternative means of exercising the right at issue. The second prong of Turner is satisfied in the present case because RHU prisoners were allowed to: (1) obtain publications from internal prison sources, (2) receive magazines for which they had a preexisting subscription; (3) have a copy of a primary religious book (in Hankins' case a Qu'ran); (4) renew subscriptions for newspapers; and (5) possess one newspaper at a time.

Based upon the factors cited by Secretary Beard in Iseley, the third Turner factor is also satisfied because accommodation of

10

the Plaintiff's asserted right arguably posed a threat to the safety of both correctional staff and other inmates. The fourth and final Turner factor asks whether there is an alternative that accommodates the right at de minimis cost to valid penological intrerests. Turner, 282 U.S. at 91. It is noted that this is not a "least restrictive alternative test." See id. at 90. Given the restrictive environment of the RHU and the concerns offered by Secretary Beard in Iseley there was an absence of available ready alternatives. In conclusion, this Court agrees that the challenged SCI-Rockview RHU publication limitations, despite the fact that they were more restrictive than those in place at other Pennsylvania state correctional facilities until being subsequently relaxed were nonetheless constitutionally acceptable. The request for summary judgment will be granted

**Retaliation**

Plaintiff's surviving claim contends that the was subjected to retaliation for pursuing his legal remedies. The alleged retaliation included the following: (1) SCI-Rockview staff ignored Hankins' requests to have his toe nails trimmed, for sensitive toothpaste, and for appropriate replacement eyeglasses; (2) Plaintiff was denied permission to purchase or receive books relating to his practice of Islam and other non-religious publications for approximately two years; (3) correctional officials prevented Plaintiff from getting incoming mail and newspapers; (4) he was improperly refused access to his legal

11

property; and (5) Plaintiff was improperly placed on total movement restriction.

To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three (3) elements.  First, a plaintiff must prove that he was engaged in a constitutionally protected activity.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." (Id.)(quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).  This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights."  (Id.)(quoting Suppon v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  Rauser, 241 F.3d at 333-34(quoting Mount Health Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.  See Lape v. Pennsylvania, 157 Fed. App'x. 491, 498 (3d Cir. 2005).  Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation. Krouse v. American Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997).

Once Plaintiff has made a prima facie case, the burden shifts to Defendants to prove by a preponderance of the evidence

12

that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." Carter v. McGrady, 292 F.3d 152, 158 (3d. Cir. 2002)(internal quotation and citation omitted).  When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned. Rauser, 241 F.3d at 334.

As noted in Allah, a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied.  Thus, the relevant inquiry is not whether the alleged retaliatory conduct was unconstitutional.  On the contrary, Plaintiff only needs to establish that he was subjected to adverse action in retaliation for his engagement in constitutionally protected conduct.

This Court's March 26, 2013 Memorandum and Order has already concluded that those contentions:  delays relating to toe nail clipping, sensitive toothpaste, and tinted eyeglasses; assertions of religious interference; denial of access to the courts, and alleged placement on total movement restriction were not by themselves viable allegations of constitutional violations.

Remaining Corrections Defendants argue that the Amended Complaint also fails to set forth a viable claim of retaliation with respect to those assertions.  See Doc. 140, p. 29.  They contend that the alleged retaliatory medically related delays do not constitute adverse action as required under Rauser.  See id.

13

at p. 30.  Moreover, the Plaintiff fails to link his alleged engagement in constitutional activity to the alleged retaliatory acts.

The filing of a lawsuit and grievances, is protected activity under the First Amendment right of prisoners to petition the court.  Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997); Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981).  Therefore, the first prong of Rauser, i.e., that the prisoner be engaged in a constitutionally protected activity, has been arguably satisfied since it is undisputed that Plaintiff initiated litigation and filed 361 grievances while at SCI-Rockview.

In regards to the second, adverse action prong of Rauser and the sensitive toothpaste claim, a declaration under penalty of perjury by SCI-Rockview dentist Doctor John Italia explains that the delays in providing said toothpaste to the prisoner were not the result of a retaliatory motive but rather related to Plaintiff's temporary transfer to another correctional facility and a request for clarification from the prison pharmacy and that Plaintiff received the special toothpaste prior to the initiation of this action.  See Doc. 146, p. 10-11.

As recently observed by this Court's Memorandum and Order of March 3, 2015, Plaintiff's deposition testimony acknowledges that he was eventually provided with tinted eyeglasses after a delay of a few months.  See Doc. 223, p. 8.  Likewise, This Court's Memorandum and Order of March 26, 2013 pointed out that Plaintiff's toe nail were clipped after a delay.  It is also noted

14

that with the exception of Health Care Administrator Williams all of the Corrections Defendants are non-medical personnel and as such did not participate in medical decisions pertaining to Hankins. Furthermore, the medical issues cited by Plaintiff were clearly not instances where he required treatment for a serious medical need which was unjustly delayed by a Corrections Defendant for a non-medical reason.

Given those considerations, this Court agrees that the requirement of Rauser that an inmate demonstrate that he suffered adverse action by the Remaining Corrections Defendants sufficient enough to deter a person of ordinary firmness' from exercising his First Amendment rights has not been met with respect to the claims that there were delays in his receipt of toe nail clipping, tinted eyeglasses and sensitive toothpaste.[9]

Although Plaintiff was subjected to other adverse actions while housed in the SCI-Rockview RHU, such as having his activities restricted, the Remaining Corrections Defendants contend that those actions were not the result of a retaliatory motive. Rather, any restrictions imposed upon the Plaintiff were the result of his continued engagement in acts of institutional misconduct and as such that Rauser requirement is not satisfied.

Once the two threshold criteria of Rauser are met, the prisoner must prove a causal link between the exercise of the constitutional right and the adverse action against him. The

---

9. Given that Plaintiff filed 361 grievances and initiated a civil rights complaint while housed in the SCI-Rockview RHU, he was personally not deterred from exercising his constitutional rights.

15

Third Circuit Court of Appeals in Rauser held that once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest. Id. at 334.

Declarations under penalty of perjury submitted by SCI-Rockview Superintendent Lamas, Corrections Classification Program Manager Tim Miller, and Superintendent's Assistant Jeffrey Rackovan similarly provide that RHU inmates can be placed on activities restriction (showering, exercise, shaving, cell cleaning, mini-law library) for misbehavior that raises serious security concerns.[10] Doc. 142, ¶ 16, Doc. 146, ¶ 6. Rackovan notes that while incarcerated Plaintiff has filed approximately 900 inmate grievances, 361 of those while housed at SCI-Rockview. See Doc. 142 at ¶ 40. While in the SCI-Rockview RHU, Hankins was issued 42 misconduct charges. See id. at ¶ 60. The Plaintiff was also on the RHU's Restricted Release List because of an attempted escape. See Doc. 146, ¶ 37. As a consequence of that designation, he could be given fewer privileges in order to attempt to garner better behavior. Rackovan states that on June 17, 2010 and July, 8, 2010 Plaintiff received activities restrictions for threatening and making verbally abusive comments

---

10. Plaintiff's multiple placements on activities restrictions also undermines his argument that he was treated differently from other RHU prisoners.

16

to Superintendent Lamas. He received three additional activities restrictions later that same year. During 2011, Hankins was issued thirteen (13) additional activities restrictions for various acts of misconduct.

Superintendent Lamas adds that the 42 misconduct charges accumulated by Hankins while in the RHU included directing abusive language including sexual comments and threats towards herself and other prison staff on multiple occasions. See Doc. 146, ¶¶ 9-12. The Plaintiff was also issued misconducts for refusing to return cleaning supplies, refusing to walk back to his cell, tampering with his food aperture, refusing to surrender handcuffs and restraints, as well as improper use of the prison library.

A declaration under penalty of perjury by Mail Room Supervisor Stewart Boone provides that contrary to Plaintiff's assertion, he never "refused to mail out any of Plaintiff's mail, assuming he had funds, or failed to forward any of his incoming mil to him." Doc. 146, p. 21. Sergeant Jeffrey Knight has also provided a sworn declaration stating that Hankins was not denied permission to purchase publications and that he never refused to mail out any of Hankins' mail because of his litigation activities. Lieutenant Daniel Fox has submitted a sworn declaration noting that Plaintiff who is Muslim had a Qu'ran in his RHU cell, was permitted to borrow books from the library, could use the mini-law library, and was granted monthly opportunity to exchange his personal property. The Plaintiff was also provided with regular opportunities to exchange personal

17

legal property and was never denied the opportunity to do so as a retaliatory measure.

RHU officials Curtis Grice, Brian Graham, Francis Dougherty and Amy Graham have submitted similar declarations asserting that any of their actions taken with respect to Inmate Hankins were not due to his litigation activities but rather were based on prison policies or in response to actions taken by the inmate.

Based upon the declarations submitted under penalty of perjury by multiple Correctional Defendants and the undisputed fact that Plaintiff repeatedly engaging in misconduct throughout his RHU confinement at SCI-Rockview acts for which he suffered the imposition of restrictions on his activities, there is no competent evidence which could establish that the alleged conduct of the Remaining Corrections Defendants was an attempt to deter the inmate's filing of lawsuits and grievances. Rather, the record reflects only that Hankins was simply being sanctioned for the 42 misconduct charges he incurred while in the RHU. The competent support evidence provided by the Remaining Corrections Defendants shows that they would have undertaken the same challenged actions and decisions absent the protected conduct because of reasons reasonably related to a legitimate penological interest.

In conclusion, the Plaintiff's allegations of retaliation by the Remaining Corrections Defendants do not satisfy the Rauser criteria and as such a viable retaliation claim has not been stated. Since Hankins has not come forward with any facts which

18

would allow a rational trier of fact to conclude that there was a retaliatory motive behind the conduct attributed to the Corrections Defendants, entry of summary judgment is appropriate with respect to the assertions of retaliation.  An appropriate Order will enter.


                                        S/Richard P. Conaboy_____
                                        RICHARD P. CONABOY
                                        United States District Judge


DATED: MARCH 27, 2015